STATE OF MAINE
CUMBERLAND, ss.
BUSINESS & CONSUMER COURT
DOCKET NO. BCD-CV-2020-07

| | | |
|---|---|---|
| KELSEY HERRICK | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **ORDER ON DEFENDANT MELISSA** |
| v. | ) | **MONTEJANO'S MOTION FOR** |
| MELISSA MONTEJANO, | ) | **SUMMARY JUDGMENT and MOTION** |
| JESSICA DEMERS, ESQ., and | ) | **TO CONSOLIDATE** |
| BOURQUE & CLEGG, LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is Defendant Melissa Montejano's Motion for Summary Judgment pursuant to M. R. Civ. P. 56 along with a Motion to Consolidate this matter with a pending York County Probate matter. Ms. Montejano contends that federal law precludes the constructive trust and unjust enrichment claims in Counts III and IV of Plaintiff Kelsey Herrick's Amended Complaint. Likewise, Ms. Montejano asserts there is no basis for the breach of contract claim in Count V. Ms. Herrick opposes the motion and asserts that the facts and evidence in the record provide a prima facie case for each element of her claims against Ms. Montejano and the Estate of Jody Brooks. Counts I and II of Ms. Herrick's Amended Complaint alleged claims for attorney malpractice against Attorney Demers and Bourque and Clegg but were dismissed in the Combined Order issued by this Court on August 10, 2020. Ms. Montejano is represented by Attorney Greg McCullough. Ms. Herrick is represented by Attorney Christopher A. Wright.

**UNDISPUTED FACTS**

Kelsey Herrick and Jody Brooks were married from 2006 to 2012, and during their marriage had two children together, Autumn and Cameron, who are still minors. (Def.'s S.M.F. ¶¶ 1-2, 4) At the time of their divorce in 2012, Mr. Brooks was employed at the Portsmouth

Naval Shipyard and had a Federal Employees Group Life Insurance ("FEGLI") policy worth $300,000. (Def.'s S.M.F. ¶ 3) Ms. Herrick and Mr. Brooks' divorce judgment required Mr. Brooks to maintain a life insurance policy in the amount of $300,000 and name Ms. Herrick as beneficiary thereof, until the child support and spousal support obligations established under the judgment were satisfied. (Def.'s S.M.F. ¶ 5) A copy of the divorce judgment was never provided to Mr. Brooks' employer, but Ms. Herrick's former attorney Jessica Demers provided a certified copy of the Divorce Judgment to the United States Office of Personnel Management ("OPM"). (Opp. S.M.F. ¶ 86). The OPM responded that they had received the judgment by letter dated February 22, 2014. (Opp. S.M.F. ¶ 86).

Mr. Brooks eventually married Ms. Montejano in 2013, and they remained married until Mr. Brooks died in an automobile accident in January 2019. (Def.'s S.M.F. ¶¶ 8-9) At the time of his death, Mr. Brooks' FEGLI policy was in effect, but he had not designated a beneficiary. (Def.'s S.M.F. ¶ 8) While his spousal support had ceased, Mr. Brooks was still paying child support of about $1,200 per month pursuant to the divorce judgment. (Def.' S.M.F. ¶ 10-11)

Ms. Herrick first spoke to Ms. Montejano about the FEGLI policy via text message on January 23, 2019. (Def.'s S.M.F. ¶ 20) She informed Ms. Montejano that although she and her children had not been listed as beneficiaries on the policy, she and her children were legally entitled to the proceeds by virtue of the divorce judgment. (Def.'s S.M.F. ¶¶ 20-24) Later, on February 7, 2019, Ms. Herrick told Ms. Montejano that she might need a copy of the police report detailing Mr. Brook's fatal accident for an application to receive his life insurance proceeds. (Def.'s S.M.F. ¶ 28) Ms. Montejano agreed to help, but the police report and autopsy report were not yet available. (Def.'s S.M.F. ¶¶ 29-30) Ms. Montejano was able to provide the police report number that she obtained from the California Highway Patrol, and Ms. Herrick

2

submitted her application for the life insurance proceeds with this number as well as a copy of her divorce decree. (Def.'s S.M.F. ¶ 30-31)

Ms. Herrick and Ms. Montejano did not speak again until March 4, 2019, when Ms. Herrick learned that her application for the life insurance proceeds was denied and that they would instead be paid to Ms. Montejano. (Def.'s S.M.F. ¶¶ 32, 35-36) Ms. Herrick supplied Ms. Montejano with a phone number from her FEGLI application that she could call for more information. (Def.'s S.M.F. ¶ 38) Ms. Montejano asked for the name of the person Ms. Herrick spoke to and what they said, adding "we will figure this out, I promise." (Def.'s S.M.F. ¶ 40) Ms. Herrick responded with a photo of the denial letter, to which Ms. Montejano reiterated, "Ok, we will figure this out." (Def.'s S.M.F. ¶ 46)

On March 5, 2019, Ms. Herrick spoke with a FEGLI administrator, hoping to obtain Mr. Brook's life insurance. The administrator informed Ms. Herrick that her claim was denied for two reasons: (1) the policy was not properly listed in the divorce judgment, and (2) the judgment had not been received by Mr. Brook's employer, The Portsmouth Naval Shipyard, before he died. (Def.'s S.M.F. ¶¶ 49-50) Ms. Herrick and Ms. Montejano spoke again on March 7, 2019. Ms. Herrick informed Ms. Montejano that she had "tried one last time yesterday with the life insurance company, but it didn't pan out", and asked Ms. Montejano to clarify her plans moving forward. (Def.'s S.M.F. ¶ 55) Ms. Herrick assumed that Ms. Montejano planned to give her the life insurance proceeds, and was wondering if she would divide the money between them. (Def.'s S.M.F. ¶¶56-57) Ms. Montejano responded that her plan was to "get this mistake fixed" and that she "wanted nothing to do with this mess." (Def.'s S.M.F. ¶ 58) Later, on March 18, 2019, Ms. Herrick suggested to Ms. Montejano, "once you receive the check, you can deposit it into your bank account and then you can write me a personal check. . . I checked with my bank,

this seems like the easiest way." (Def.'s S.M.F. ¶ 59) Ms. Montejano did not respond. (Def.'s S.M.F. ¶ 61)

On March 20, 2019, Ms. Herrick sent a text message to Ms. Montejano to let her know that her lawyer "does know of our arrangement for the life insurance and he may be contacting you regarding that or more information regarding your filing the estate." (Def.'s S.M.F. ¶ 62) Ms. Herrick's message was based on her assumption that the conversations on March 4 and 7, 2019 amounted to an agreement for Ms. Montejano to transfer funds from the life insurance policy to her. (Def.'s S.M.F. ¶ 63)

Ms. Montejano was appointed personal representative for the Estate of Jody Brooks on April 18, 2019 and commenced a probate proceeding in the York County Probate court on March 21, 2019. (Def.'s S.M.F. ¶ 68) Ms. Herrick filed a claim against the estate based on Mr. Brook's failure to designate her as beneficiary of his life insurance policy, but Ms. Montejano denied the claim. (Def.'s S.M.F. ¶¶ 69-70) Ms. Herrick then filed a petition to resolve the disputed claim, to which Ms. Montejano responded with a motion to dismiss. (Def.'s S.M.F. ¶ 71) The parties assert that the Probate Court decided that the disputed claim therein should be consolidated with and decided by this Court, and a Motion to Consolidate the matters is pending before the Court. (Def.'s S.M.F. ¶ 73)

## STANDARD OF REVIEW

A party is entitled to summary judgment pursuant to M. R. Civ. P. Rule 56(c) when the summary judgment record reflects there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears

more credible or persuasive. *F.R. Carroll, Inc. v. T.D. Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646 (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996). Each party's statements must contain a reference to the record where "facts as would be admissible in evidence" may be found. M. R. Civ. P. 56(e). When the plaintiff is opposing summary judgment, it must establish a prima facie case for every element of each claim. *Tri-Town Marine, Inc. v. J.C. Milliken Agency, Inc.,* 2007 ME 67, ¶ 7, 924 A.2d 1066. The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.,* 2013 ME 13, ¶ 19, 60 A.3d 759.

Central to the claims at issue is the divorce judgment between Ms. Herrick and Jody Brooks. The judgment states that:

> Defendant has a life insurance policy in the amount of $300,000. Defendant shall maintain his life insurance policy in the amount of $300,000 with a reputable insurance company, naming Plaintiff [Ms. Herrick] as beneficiary thereof, until child support and spousal support obligations hereunder cease, and shall provide periodic proof, upon request by Plaintiff, that said policy is in full force and effect.

Divorce Judgment ¶ 17. Thus, according to the judgment, Mr. Brooks was required to maintain life insurance with a reputable insurer in the amount of $300,000, naming Ms. Herrick as beneficiary - whether or not that insurance was his FEGLI policy. At the time of Mr. Brooks' death, his spousal support obligation had terminated, but he still had an obligation to pay child support.

## DISCUSSION

In Ms. Montejano's motion, she asserts that federal law precludes the equitable and unjust enrichment claims made against her in Counts III and IV of Ms. Herrick's Amended

Complaint. Likewise, Ms. Montejano requests summary judgment on Count V alleging breach of contract, as well as claims brought against the estate of Jody Brooks in the Probate matter.

**Counts III and IV- Imposition of a Constructive Trust and Disgorgement of Funds, and Unjust Enrichment**

In Count III of Ms. Herrick's First Amended Complaint, she alleges that pursuant to the divorce judgment, she has legal and equitable interests in the FEGLI policy benefits in Ms. Montejano's possession. The Federal Employee's Group Life Insurance Act of 1954 ("FEGLIA"), 5 U.S.C. § 8701 *et seq*., establishes a life insurance program for federal employees. FEGLIA provides that an employee may designate a beneficiary to receive the proceeds of his life insurance at the time of his death. 5 U.S.C. § 8705(a). Then, upon an employee's death, life insurance benefits are to be paid in accordance with a specified "order of precedence." *Id.* The proceeds accrue "First to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death." *Id.* "If there is no designated beneficiary", the benefits are paid "to the widow or widower of the employee." *Id.* Absent a widow or widower, the benefits accrue, in order, to the decedent's children or their descendants, parents or their survivors, the executor or administrator of the estate, and last, to "other next of kin." *Id.* To be effective, the beneficiary designation and any accompanying revisions to it must be in writing and duly filed with the Government. *See Id.*

In 1998, Congress amended FEGLIA to create a limited exception to an employee's right of designation. The statute now provides that, "[a]ny amount which would otherwise be paid to a person determined under the order of precedence. . . shall be paid (in whole or in part) by the Office [of Personnel Management] to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation" or related settlement, but only in the event the "decree, order, or agreement" is received before the date of the

6

employees death "by the employing agency or, if separated from service, by the Office." 5 U.S.C. § 8705(e).

Federal courts have consistently construed FEGLIA to provide employees an "unfettered freedom of choice" in selecting the beneficiary of their insurance proceeds. *Hillman v. Maretta,* 569 U.S. 483, 495 (2013). Therefore, even in instances where employees have failed to update their beneficiary designations as apparently intended, Courts have held fast to the procedures established by Congress and codified in FEGLIA.

In *Hillman v. Maretta*, the Supreme Court of the United States evaluated the interaction of FEGLIA and a Virginia law purporting to revoke beneficiary designations in the event of an annulment or divorce. *Id.* at 488. In affirming the Virginia Supreme Court, the Court held that the state law conflicted with FEGLIA and was therefore preempted. *Id*. The Court noted:

> One can imagine plausible reasons to favor a different policy. Many employees perhaps neglect to update their beneficiary designations after a change in marital status. As a result, a legislature could have thought that a default rule providing that insurance proceeds accrue to a widow or widower, and not a named beneficiary, would be more likely to align with most people's intentions. Or, similarly, a legislature might have reasonably believed than an employee's will is more reliable evidence of his intent than a beneficiary designation form executed years earlier.

*Id.* at 494-95. The Court went on to explain the judgment made by Congress, evidenced in the plain language of FEGLIA: "Rather than draw an inference about an employee's probable intent from a range of sources, Congress established a clear and predictable procedure for an employee to indicate who the intended beneficiary of his life insurance shall be.*" Id.* at 495. "[. . .] FEGLIA evinces Congress' decision to accord federal employees an unfettered 'freedom of choice' in selecting the beneficiary of the insurance proceeds and to ensure the proceeds would actually 'belong' to that beneficiary. *Id.*

7

In its *Hillman* opinion, the Court noted it was not "writing on a clean slate" and considered other cases where federal insurance statutes were in conflict with state laws mandating different distributions of benefits. *Id.* at 492. In a case with very similar facts to those currently before the Court, *Ridgway v. Ridgway*, the Supreme Judicial Court of Maine imposed a constructive trust on insurance proceeds paid to a service member's widow, who was the named beneficiary, and ordered they be paid to the decedent's previous wife as required by the terms of a divorce decree. 454 U.S. 46, 50-53 (1981). As in *Hillman,* the Supreme Court explained that the applicable provisions of the Servicemen's Group Life Insurance Act of 1965 ("SGLIA") made clear that "the insured service member possesses the right freely to designate the beneficiary and to alter that choice at any time by communicating the decision in writing to the proper office." *Id.* at 56. Thus, despite the existence of a divorce decree requiring the contrary, the life insurance proceeds accrued to the decedent's widow according to SGLIA's order of precedence[1]. *Id.* at 52, 60.

Like the facts of Ridgway, Ms. Herrick was not named the beneficiary of Mr. Brooks' life insurance policy, despite the existence of a Divorce Judgment requiring otherwise. According to the order of precedence, in the absence of a named beneficiary, the proceeds of the policy accrue to the decedent's widow, in this case Ms. Montejano. However, Ms. Herrick contends that she is still the rightful beneficiary of the FEGLI policy proceeds subject to the exception detailed in section 8705(e).

---

[1] The Supreme Court of the United States traced their decisions in both *Hillman* and *Ridgway* to their decision in *Wissner v. Wissner,* 338 U.S. 655 (1950). In *Wissner,* the Court determined that the National Service Life Insurance Act of 1940 ("NSLIA") pre-empted a widow's state-law action to recover life insurance proceeds. In *Hillman*, the Court noted that its reasoning in both *Ridgway* and *Wissner* apply "with equal force" because the statutes considered therein were "strikingly similar" to FEGLIA. *Hillman,* 569 U.S. 483 at 493.

According to section 8705(e),  a person with a claim to FEGLI proceeds pursuant to a divorce decree shall be paid to the extent of their interest so long as the judgment is received by the employing office*, or if separated from employment*, by the OPM, prior to the employee's death. 5 U.S.C. § 8705(e). Ms. Herrick asserts that because she provided the OPM with a certified copy of the divorce judgment in 2014, prior to Mr. Brooks' death, she met the requirements of the exception. In Ms. Herrick's view, it does not matter that the judgment was provided to the OPM rather than Portsmouth Naval Shipyard, because the OPM had a duty to process and forward the Divorce Judgment to the appropriate office.

In support of her argument, Ms. Herrick points to *Nixon v. United States,* 916 F.Supp2d 855 (N.D. Ill. 2013). In *Nixon,* a United States Small Business Administration ("SBA") employee signed an updated FEGLI beneficiary form and provided it to the SBA. However, the SBA failed to send the form to the appropriate office, resulting in the wrong beneficiaries receiving payment after the employee's death. The Court in *Nixon* held that:

> It makes no sense to interpret FEGLIA to require submission of beneficiary designation forms to the Government while simultaneously absolving the Government of any responsibility for processing and maintaining those forms in the manner required by statute to make them effective. The Court concludes then, that the Government has a duty under FEGLI and the common law to preserve beneficiary forms submitted by employees in a manner that permits an assessment of the employee's current beneficiaries at the time of death.

*Nixon,* 916 F.Supp2d at 863. After deciding *Nixon,* a similar case arrived before the United States District Court for the Northern District of Illinois three years later: *USAA Life Ins. Co. v. Benvenuto,* 2016 U.S. Dist. LEXIS 133057 (N.D. Ill. 2016). In *Benvenuto,* an employee of the FBI was required by divorce decree to designate his minor children as beneficiaries of his FEGLI policy. Although the FBI could not locate a certified copy of the divorce decree in its records, the

9

decedent's former wife averred that she had provided the decree to another FBI employee who failed to deliver it to the proper parties internally. The District Court agreed with the plaintiff that, in light of the holding in *Nixon,* had the defendant provided the divorce decree to an FBI employee, that employee had a duty to forward it to the proper parties. Both *Nixon* and *Benvenuto* share a common fact-pattern; documents relevant to the accrual of life insurance benefits were sent to the decedents' employing offices prior to their death but failed to end up in the correct hands.

Ms. Herrick does not allege that she sent the Divorce Judgment to the Portsmouth Naval Shipyard, only to be lost in the shuffle due to employee error. Rather, Ms. Herrick alleges that she sent the Judgment to the incorrect office (the OPM), but that that office was responsible for forwarding the Judgment to the correct one. In contrast with *Nixon* and *Benvenuto*, federal courts have been less consistent when asked whether the Government has a duty to take affirmative steps to remedy a party's mistakes. For instance, the Fifth Circuit has addressed similar facts to those in *Nixon. See Metropolitan Life Ins. Co. v. Atkins,* 225 F.3d 510 (5th Cir. 2000). In *Atkins,* the Court expressly held that while the Government had no duty to ensure that employees properly complete their insurance forms, FEGLIA required the Government to properly *maintain* completed forms turned over to its care. *Id.* at 514. However, in *Freirichs v. United States,* a decedent incorrectly filled out his life insurance forms, contacted the human resources department of his former employer, and was told the issue had been corrected. 2006 U.S. Dis. LEXIS 2464. When the issue was never actually corrected, the Court held that Congress did not indicate that it intended FEGLIA to create any actionable duties against the Government. *Id.* at *2 n. 3.

10

The plain language of Section 8705(e) requires a divorce judgment to be sent to the decedent's employing office prior to their death to alter the order of precedence. Only if the employee has been separated from employment does the statute indicate that the judgment should be provided to OPM. Although federal case law has previously imposed a duty on the Government to maintain the documents and forms in their possession, courts have been far less friendly to requiring the Government to affirmative steps to remedy mistakes made by other parties. Thus, the Court finds that, according to FEGLIA's order of precedence, the benefits of Mr. Brooks' FEGLI policy correctly accrued to Ms. Montejano. Therefore Ms. Montejano is entitled to summary judgment with regard to Count III.

Count IV of Ms. Herrick's Amended Complaint alleges a claim for Unjust Enrichment. To prevail on a claim for unjust enrichment, the complaining party must show that "(1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC,* 2017 ME 95, ¶ 12, 161 A.3d 696. Because the benefits of Mr. Brooks' FEGLI policy correctly accrued to Ms. Montejano, the Court cannot hold her retention of those benefits inequitable. Accordingly, Ms. Montejano is also entitled to summary judgment regarding Count IV.

**Count V- Breach of Contract**

In addition to Ms. Herrick's equitable and unjust enrichment claims, Count V of her Amended Complaint alleges breach of contract. Specifically, Ms. Herrick contends that she and Ms. Montejano entered into an enforceable agreement when Ms. Montejano made statements

such as "we will figure this out, I promise", when she stated that she planned to "get this mistake fixed", and that she "wanted nothing to do with this mess." (Def.'s S.M.F. ¶¶ 46, 58).

Any action to enforce a contract necessarily depends on the existence of a contract itself. "A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Sullivan v. Porter,* 2004 ME 134, ¶ 13, 861 A.2d 625. "Generally, the existence of a contract is a question of fact to be determined by the jury." *Id*. However, when a plaintiff fails to allege facts that generate a genuine issue of whether a contract exists, summary judgment is proper. *See Stanton v. Univ. of Maine Sys.,* 2001 ME 96, ¶ 14, 773 A.2d 1045.

Ms. Herrick fails to establish the existence of any contract terms, or any facts indicating Ms. Montejano assented to being bound by said terms. Rather, Ms. Montejano merely indicated she was willing to help Ms. Herrick "fix the mess." When Ms. Herrick reached out and suggested explicitly that Ms. Montejano divide the insurance proceeds and send her a check, Ms. Montejano did not respond. Further, Ms. Herrick fails to establish that any consideration was given to establish an enforceable contract between the parties—Ms. Herrick admittedly had no plans to compensate Ms. Montejano in any way for providing her with the insurance proceeds. Thus, the Court finds that Ms. Herrick has failed to allege facts sufficient to generate a genuine issue of whether a contract existed, entitling Ms. Montejano to summary judgment on Count V.

**Motion to Consolidate and Ms. Herrick's Claims Against the Estate of Jody Brooks**

In addition to the claims brought against Ms. Montejano, Ms. Herrick has also brought a claim against the Estate of Jody Brooks in the York Country Probate Court. The Court understands that the parties have agreed to consolidate the claim against Jody Brooks' estate with the claims against

Ms. Montejano. However, it is not clear to the Court if the parties are asking this Court to actually adjudicate the Probate matter petition pending against Mr. Brooks' estate, or simply to make legal findings here in the nature of declaratory relief. The Court therefore directs counsel for both Ms. Herrick and Ms. Montejano to supplement their arguments on the Motion to Consolidate, clarifying what findings and legal determinations they are asking the Court to make regarding the decedent, and as to what authority the Court may have to do so. In addition, they should clarify what authority they believe the Court has to adjudicate the Petition pending before the Probate Court. Counsel have 14 days from the date of this Order to file simultaneous supplemental arguments on the motion to consolidate.

### CONCLUSION

The Divorce Judgment between Mr. Brooks and Ms. Herrick found that Mr. Brooks had a FEGLI policy in the amount of $300,000, and required Mr. Brooks to maintain a life insurance policy of that value with a reputable insurer, naming Ms. Herrick beneficiary to secure his child and spousal support obligation. FEGLIA has been interpreted by federal courts to provide federal employees with the "unfettered freedom" to name the beneficiary of their choice. Given the federal decisions, and the Summary Judgment record before it, the Court concludes that Ms. Herrick cannot bring the claims she has brought against Ms. Montejano.

However, the Divorce Judgment did not simply require Mr. Brooks to name Ms. Herrick beneficiary of the FEGLI policy. He was required to name her beneficiary of a life insurance policy in the amount of $300,000 with a reputable insurer to secure certain obligations under that Judgment. The parties seem to agree he failed to do that.

The Court will await supplemental arguments from the parties as set out above before acting on the Motion to Consolidate, and before ordering entry of Judgment in this matter. The Clerk is directed to enter this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

**December 2, 2020**                                  **/s/M. Michaela Murphy**

**DATE**                                  **SUPERIOR COURT JUSTICE**

BCDWB-CV-2020-7


KELSEY HERRICK, INDIVIDUALLY,
and obo minor children

v.

MELISSA MONTEJANO,
JESSICA DEMERS, ESQ.
and BORQUE & CLEGG, LLC


Party Name:                                      Attorney Name:


*Kelsey Herrick, et al.*                  **Christopher Wright, Esq.**
                                                   Siegel & Crockett, PC
                                                   63 Main Street
                                                   Bethel, ME 04217


*Melissa Montejano*                  **Gregory McCullough, Esq.**
                                                   McCoullough Law Offices
                                                   1074 PO Box 910
                                                   Sanford, ME 04073


*Jessica Demers, Esq.*                  **James Bowie, Esq.**
                                                   Thompson, Bowie & Hatch
                                                   415 Congress Street
                                                   Portland, ME 04112


*Bourque & Clegg*                  **George Dilworth, Esq.**
                                                   Drummond Woodsum
                                                   84 Marginal Way, Suite 600
                                                   Portland, ME 04101

STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          BCD-CV-20-07


KELSEY HERRICK, et al.,

     Plaintiffs                    **COMBINED ORDER ON MOTIONS**
                                        **FOR SUMMARY JUDGMENT**
v.

MELISSA MONTEJANO, et al.

     Defendants


Before the Court are Defendant Attorney Jessica Demers's and Defendant Bourque & Clegg LLC's motions for summary judgment. For the following reasons, the Court grants both motions.

**BACKGROUND**

This is a professional negligence case arising out of Defendants Jessica Demers's and Bourque and Clegg's representation of plaintiff Herrick during Herrick's divorce from her husband Jody Brooks. In addition to Herrick, the Complaint also names as Plaintiffs the children of Herricks and Brooks (the "Minor Plaintiffs"). The following facts are not in dispute.

In 2011, Herrick decided to divorce her husband, Jody Brooks, and retained Bourque and Clegg to represent her in the divorce. (Demers S.M.F. ¶¶ 2, 4-5; B&C S.M.F. ¶ 6.) Demers was at that time an attorney employed at Bourque and Clegg and was the only attorney who assisted Demers during the divorce. (Demers S.M.F. ¶¶ 2 4-5; B&C S.M.F. ¶ 7.) The fee agreement between by Bourque & Clegg and Herrick names Herrick as the only client. (Demers S.M.F. ¶ 6; B&C S.M.F. ¶ 9.) The Springvale District Court entered a divorce judgment on June 7, 2012. (Demers S.M.F. ¶ 13; B&C S.M.F. ¶ 15.)

1

Paragraph 17 of the judgment provided that:

> Defendant [Jody Brooks] shall maintain his life insurance policy in the amount of $300,000 with a reputable insurance company, naming Plaintiff as beneficiary thereof, until child support and spousal support obligations established hereunder cease, and shall provide periodic proof, upon request by Plaintiff, that said policy is in full force and effect.

(Demers S.M.F. ¶ 16; B&C S.M.F. ¶ 17.) At the time of the judgment, Brooks worked at the Portsmouth Naval Shipyard and had a Federal Employees Group Life Insurance ("FEGLI") policy. (Demers S.M.F. ¶ 3; B&C S.M.F. ¶ 4.) The last time that Herrick and Demers discussed Jody Brooks's life insurance was on June 6, 2012, the day of the divorce trial. (Demers S.M.F. ¶ 22; B&C S.M.F. ¶ 22.) Demers told Herrick that Herrick would need to call Brooks's employer to make sure that Brooks named Herrick as the beneficiary of Brooks's life insurance policy. (Demers S.M.F. ¶ 23; B&C S.M.F. ¶ 20.)

Pursuant to the judgment, Brooks's Attorney was required to prepare and present the Court with two Qualified Domestic Relations Orders ("QDROs") in order to effectuate the Court's award of 50% of Brooks's Thrift Savings Plan ("TSP") and 50% of Brooks's Federal Employee Retirement System Account ("FERS Account") to Herrick. (Demers S.M.F. ¶¶ 14-15.) Brooks's attorney failed to do this. (Demers S.M.F. ¶ 31.) Instead, Demers prepared the QDROs and mailed them to the Court on August 8, 2012. (Demers S.M.F. ¶ 32.) On September 6, 2012, Demers mailed certified copies of the QDROs to the Office of Personnel Management ("OPM") and the TSP Legal Processing Unit. (Demers S.M.F. ¶ 34.)

On October 31, 2012, Demers ended her employment at Bourque & Clegg and started her own law firm. (Demers S.M.F. ¶ 35; B&C S.M.F. ¶ 33.) In March 2013, Bourque & Clegg, on behalf of Herrick, filed a contempt action against Jody Brooks to recover unpaid legal fees that the Divorce Judgment obligated him to pay to Bourque & Clegg. (B&C S.M.F. ¶ 27.) Bourque and

Clegg continued to represent Herrick in proceedings related to the collection of these legal fees until February 7, 2014. (Pl.'s Opp. to B&C S.M.F. ¶ 62; B&C Reply S.M.F. ¶ 62.) On July 5, 2013, OPM mailed a letter to Bourque and Clegg regarding Brooks's FERS Account and which requested a certified copy of the Divorce Judgment. (Demers S.M.F. ¶ 38.) Bourque and Clegg forwarded the letter to Demers. (Demers S.M.F. ¶ 39.) In August 2013, Demers mailed a certified copy of the Judgment as well as another copy of the QDRO to OPM. (Demers S.M.F. ¶¶ 39, 41.)

In early 2019 Brooks died in an automobile accident after having married Melissa Montejano.[1] (Demers S.M.F. ¶ 43; B&C S.M.F. ¶ 34.) Brooks was covered by the same FEGLI policy at the time of his death. (Pl.'s Add'l S.M.F. ¶ 56.) Brooks, however, had not designated a beneficiary for his FEGLI policy. (Demers S.M.F. ¶ 53.) On January 20, 2019, Herrick inquired about obtaining Brooks's FEGLI benefits and Herrick received an application. (Demers S.M.F. ¶ 44.) On March 4, 2019, Herrick learned that her application had been denied and that the FEGLI benefits were being paid to Defendant Montejano. (Demers S.M.F. ¶ 45.) The stated reason for the denial was that the divorce Judgment had not been received by the FEGLI office prior to Brooks's death and that the Judgment did not expressly reference Brooks's FEGLI policy. (Demers S.M.F. ¶¶ 45-50; B&C S.M.F. ¶ 36-37.)

Plaintiffs filed the complaint in this matter on July 31, 2019. (Compl. at 12.) The Complaint was received by the court on August 2, 2019. (Compl. at 1.)

**STANDARD OF REVIEW**

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). "[S]ummary

---

[1] Melissa Montejano is also named as a defendant in Plaintiffs' complaint.

judgment is appropriate when the portions of the record referenced in the statements of material fact disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400.

**DISCUSSION**

Both Demers and Bourque and Clegg argue that summary judgment should be granted in their favor because Plaintiff Herrick's claims are barred by the statute of limitations and because they did not owe the Minor Plaintiffs a duty of care. Plaintiffs oppose the motion on two grounds. First, Plaintiffs argue that a genuine issue of material fact exists with regard to whether the defendants breached the applicable duty of care within the limitations period. Second, Plaintiffs argue that, because the Minor Plaintiffs are the intended third-party beneficiaries of Brooks life insurance benefits, the Defendants owed them a duty of care. The Court does not find either of Plaintiffs' arguments persuasive.

**I. Statute of Limitations**

"[A] civil action against an attorney for professional negligence, malpractice, or breach of contract for legal services "shall be commenced within 6 years after the cause of action accrues." *Packgen, Inc. v. Bernstein*, 2019 ME 90, ¶ 1, 209 A.3d 116 (quoting 14 M.R.S. § 752). The limitations period begins to run "from the date of the act or omission giving rise to the injury, not from the discovery of the malpractice, negligence or breach of contract . . . ." *Id.*; 14 M.R.S. § 753-B.

The undisputed facts of this case show that the only legal services the Defendants provided to Herrick within the period of limitations was to mail a QDRO and certified copy of the judgment to OPM and to represent Herrick in proceedings related to a motion for contempt. Plaintiffs' legal malpractice claims, however, are not based on any alleged negligence in connection with either of

4

these acts. Instead, Plaintiffs claims are based on alleged omissions or negligent failures to act by the defendants which resulted in Herricks's failure to obtain Brooks's FEGLI benefits. Specifically, Plaintiffs claim that Defendants' breached their duty by: (1) failing to file a copy of the judgment with the FEGLI office; (2) failing to inquire with Brooks's divorce attorney if either he or Brooks had filed a copy of the Judgment with the FEGLI office; and (3) failing to inquire with the FEGLI office if the judgment had been filed.

Plaintiffs argue that because the Defendants' negligent conduct was an omission, there is therefore no certain date on which the Plaintiffs' cause of action accrued. Plaintiffs aver that the date is a question of fact for the jury to decide and that a genuine issue of material fact therefore exists. Because the Complaint was filed on July 31, 2019, however, the Plaintiffs may only pursue relief for a cause of action which accrued on or after July 31, 2013. 14 M.R.S §§ 752, 753-B. In order to defeat Defendants' motions for summary judgment, Plaintiffs must therefore generate a prima facie case that a negligent omission occurred within the limitations period. *Pawlendzio v. Haddow*, 2016 ME 144, ¶ 14, 148 A.3d 713 ("to defeat a defendant's motion for summary judgment, a plaintiff must present evidence sufficient to generate a prima facie case of a legally cognizable claim"). In other words, the Plaintiffs must present evidence that (1) the Defendants failed to act; (2) the Defendants' failure to act breached the standard of care owed to the Plaintiffs; and (3) the Defendants' failure to act occurred within the six years preceding the filing of the complaint in this matter.

There is no genuine dispute that the defendants failed to file a certified copy of the Divorce Judgment with the FEGLI office or investigate whether Jody Brooks had named Herrick as the beneficiary of his FEGLI policy. This failure, however, is not so obviously a breach of duty that a

5

breach may be determined as matter of law or is within the ordinary knowledge of laymen.[2] *Id.* ¶ 12 (citing *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107 ¶ 26, 8 A.2d 677). Expert testimony is therefore required to establish that these failures constitute a breach of the Defendants' duty. *Id.* Plaintiffs are unable to defeat Defendants' motions for summary judgment simply by alleging that the Defendants breached their duty. *See id.* ¶ 14.

In support of their statements of material fact, Plaintiffs have filed depositions of the Defendants and Plaintiff Herrick as well as correspondence between Herrick's attorney and the FEGLI Office. None of Plaintiffs' statements of material fact reference any expert testimony which would establish that the standard of care required either Demers or Bourque & Clegg to inquire into whether the FEGLI Office had received a copy of the divorce judgment or whether Jody Brooks had named Herrick as the beneficiary of his FEGLI policy. Similarly, there is no expert testimony which would establish that the Defendants were required to perform either of these acts after July 31, 2013, the date six years prior to the filing date of the complaint in this case. Given the absence of expert testimony, Plaintiffs are unable to generate a prima facie case that the Defendants committed a breach of duty within the limitations period. *See id.* ¶¶ 12, 14. Accordingly, there is no genuine issue of material fact in regard to whether the Defendants are liable to Plaintiff Herrick for professional negligence and the Defendants are entitled to a judgment as a matter of law on Plaintiff Herrick's claims. *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400.

[2] For instance, paragraph 17 of the Divorce Judgment required Jody Brooks to maintain a $300,000 life insurance policy with a "reputable insurance company." The Divorce Judgment does not mention Brooks's FEGLI policy. Additionally, the parties agree that Brooks did not name Herrick—or any other person—as the beneficiary of his policy. There is thus no dispute that Brooks's failure to name Herrick as the beneficiary caused Herrick's injury.

## II. No Duty Was Owed to the Minor Plaintiffs

14 M.R.S. § 853 provides "[i]f a person entitled to bring any of the actions under sections 752 to 754 . . . is a minor . . . when the cause of action accrues, the action may be brought within the times limited herein after the disability is removed." In light of this provision, Defendants cannot argue that the claims of the Minor Plaintiffs are time barred. Defendants do however, argue that summary judgment should be granted because neither Defendant owed the Minor Plaintiffs a duty of care. Plaintiffs do not dispute that the Minor Plaintiffs were not clients of either Defendant. (Pl.'s Opp. to Demers S.M.F. ¶ 9; Pl.'s Opp. to B&C S.M.F. ¶¶ 9-10.) Instead, Plaintiffs argue that the Minor Plaintiffs are owed a duty of care as intended beneficiaries of the Defendants' legal assistance. (Pl.'s Opp. S.M.F. ¶ 9.) Specifically, the Plaintiffs claim that they were the intended beneficiaries of financial benefits such as child support payments and life insurance payments. (Pl.'s Opp. S.M.F. ¶ 9.)

As a general rule, "an attorney owes a duty of care to only his or her client." *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 21, 105 A.3d 439. Only "in limited and rare situations, when an attorney's actions are intended to benefit a third party and where policy considerations support it" will an attorney owe a duty of care to "a limited class of nonclients." *Id.* "An attorney will never owe a duty of care to a nonclient, however, if that duty would conflict with the attorney's obligations to his or her clients." *Id.* "The existence of a duty of care is a question of law . . . ." *Reid v. Town of Mt. Vernon*, 2007 ME 125, ¶ 14, 932 A.2d 539.

In this case, there is no genuine dispute in regard to who was the intended beneficiary of Brooks's FEGLI policy. Both the Plaintiffs and the Defendants agree that, pursuant to the Divorce Judgment, Brooks was required to name Plaintiff Herrick—not the Minor Plaintiffs[3]—as the

---

[3] Plaintiffs, in fact, concede the Brooks wanted to name the Minor Plaintiffs as the beneficiaries of his policy. (B&C S.M.F. ¶ 19; Pl's Opp. B&C S.M.F. ¶ 19.)

7

beneficiary of his policy. Moreover, there are multiple and competing interests involved in a divorce proceeding; interests which include the custodial, emotional and financial support of children. *Miller v. Miller*, 677 A.2d 64, 68 (Me. 1996). Any recognition that an attorney representing a party to a divorce also owed a duty of care to that party's minor children could create multiple conflicts of interest, and also could impose an undue burden on the legal profession. *Estate of Cabatit*, 2014 ME 133, ¶¶ 18, 21. Given the undisputed facts in the summary judgment record, the Court is able to determine as a matter of law that neither Demers nor Bourque and Clegg could have owed the Minor Plaintiffs a duty of care as nonclients. *Id.; Reid*, 2007 ME 125, ¶ 14, 932 A.2d 539.

**CONCLUSION**

There is no genuine issue of material fact with respect to whether the Attorney Defendants committed professional negligence within the six years preceding the filing of the complaint in this matter. The Court also concludes that, as a matter of law, the Attorney Defendants did not owe the Minor Plaintiffs a duty of care.

**The entry is**

> **Defendant Jessica Demers's Motion for Summary Judgment is GRANTED.**
>
> **Defendant Bourque and Clegg's Motion for Summary Judgment is GRANTED.**

**The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).**

Date: <u>August 10, 2020</u>                    <u>        /s        </u>
                                                        **M. Michaela Murphy**
                                                        **Justice, Superior Court**

8

*KELSEY HERRICK, INDIVIDUALLY,*
*and obo minor children*

*v.*

*MELISSA MONTEJANO,*
*JESSICA DEMERS, ESQ.*
*and BORQUE & CLEGG, LLC*

Party Name:                                           Attorney Name:

*Kelsey Herrick, et al.*                        **Christopher Wright, Esq.**
                                                Siegel & Crockett, PC
                                                63 Main Street
                                                  Bethel, ME 04217

*Melissa Montejano*                           **Gregory McCullough, Esq.**
                                                  McCoullough Law Offices
                                                1074 PO Box 910
                                                Sanford, ME 04073

*Jessica Demers, Esq.*                       **James Bowie, Esq.**
                                                  Thompson, Bowie & Hatch
                                                  415 Congress Street
                                                  Portland, ME 04112

*Bourque & Clegg*                            **George Dilworth, Esq.**
                                                  Drummond Woodsum
                                                  84 Marginal Way, Suite 600
                                                  Portland, ME 04101

STATE OF MAINE                                    BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-20-07

KELSEY HERRICK, individually and on behalf    )
of her minor children AB and CB,              )
                                              )
              PLAINTIFF,                      )
v.                                            )    **ORDER ON MOTION FOR LEAVE**
                                              )       **TO AMEND COMPLAINT**
MELISSA MONTEJANO, JESSICA DEMERS,            )
ESQ. & BOURQUE & CLEGG, LLC,                  )
                                              )
              DEFENDANTS.                     )

.

Before the Court is Plaintiff Kelsey Herrick's motion for leave to amend the complaint. Specifically, Plaintiffs seek to amend Count II (legal malpractice) of their complaint with information acquired during discovery that, in Plaintiffs' view, clarifies the timeline of Defendant Bourque & Clegg's representation, and bolsters Count II of their Complaint. Defendants object to this request, arguing the motion should be denied because: 1) the requested amendment would be futile, 2) the new claims asserted in the requested amendment are time barred because they are distinct from, and thus do not relate back to, the claims asserted in Plaintiff's initial complaint, 3) allowing the proposed amended complaint at this time would unfairly prejudice the defendants, and 4) the proposed amendment is not predicated on anything "new" and is thus not properly subject of an amended complaint.

Plaintiffs Kelsey Herrick and her two minor children are represented by Attorney Christopher A. Wright. Defendants are represented by Attorneys George T. Dilworth, and Jeffrey T. Piampiano. The Court has reviewed Plaintiff's motion and Defendant's opposition, and for reasons stated, grants Plaintiff's motion to amend the complaint.

Plaintiffs bring this motion to amend the complaint according to M. R. Civ. P. 15(a), which states:

1

a party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of the court or by written consent of the adverse party; and leave shall be given when justice so requires.

The Maine Rule tracks the language of the related federal rule, which courts and commentators have stressed ought to be liberally applied to achieve the most expeditious resolution of litigation on the merits. *Bangor Motor Co. v. Chapman,* 452 A.2d 389, 392 (Me. 1982). It follows that leave to amend a complaint will be given freely, and the Law Court has construed this mandate to mean that "if a moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice". *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc.,* 1998 ME 53, ¶ 14, 707 A.2d 1311, 1315 (quoting Diversified Foods, Inc. v. First Nat'l Bank of Boston, 605 A.2d 609, 616 (Me. 1992). A motion to amend a pleading pursuant to Rule 15 is committed to the sound discretion of the trial court. *Bangor Motor Co.,* 452 A.2d 389, 392.

Defendants' first argument in opposition to the motion is that amendment of the complaint would be futile, and would fail to survive a motion to dismiss. Defendants make various assertions in support of this argument, the first being that Plaintiff testified that she understood (or should have understood) that her initial engagement agreement with Defendants was limited to obtaining a divorce judgment on her behalf, and that she did not explicitly request attorneys at Bourque & Clegg to monitor life insurance-related obligations. Additionally, Defendants assert that Plaintiff's deposition testimony confirms her understanding that her engagement with the firm would end upon the completion of her divorce, and that any additional

2

work undertaken by the firm would be separate from the divorce itself. Finally, Defendants argue that because Plaintiffs initially claimed the sole predicate for claims against the firm were based on its alleged failure to supervise Attorney Demers on a *respondeat superior theory,* the proposed amendments to Count II of Plaintiff's complaint fail to relate back to the same transaction or occurrence.

Despite Defendants' various contentions, and federal precedent imposing a heightened standard to amend pleadings[1], the Law Court has previously held that a finding that an action presents no case or controversy alone is not sufficient to deny a motion to amend. *Bangor Motor Co.,* 452 A.2d 389, 393. However, even were this Court to adopt a heightened standard that required the Amended Complaint to survive a motion to dismiss, the Court finds that the Amended Complaint would likely do so.

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the Court must view the complaint in the light most favorable to the plaintiff to determine whether it sets forth facts that would entitle the plaintiff to relief under some legal theory. M. R. Civ. P. 12(b)(6). Maine law requires a plaintiff to satisfy the following elements to state a claim for legal malpractice: 1) the breach of a duty by defendant to conform to a certain standard of conduct, and 2) the plaintiff's damages were proximately caused by the defendant's breach. *Brewer v. Hagemann* 2001 ME 27, 771 A.2d 1030, 1032. Taken as true, the allegations set forth in the Amended Complaint meet all of the requirements of a legal malpractice claim. The Amended Complaint alleges that the Defendant owed Plaintiffs a duty to supervise the actions of its employees to ensure that competent legal service was being provided. Amended Complaint at ¶ 65. Count II of

---

[1] Federal precedent has held that a requested amendment should be denied as futile where, if granted, it would be subject to dismissal on either a motion to dismiss or a motion for summary judgment. *See, e.g., Bethany Pharacal Co., Inc. v. QVC, Inc*., 241 F.3d 854, 860-61 (7th Cir. 2001); *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2" Cir. 2003).

3

the Amended Complaint also asserts that attorneys employed by the firm breached their duties to provide competent legal counsel to the Plaintiffs. Amended Complaint ¶¶ 61-64, and that the Defendants failed to effectively oversee the actions of its employees. Amended Complaint ¶¶ 66-67. Plaintiffs assert that they did not receive FEGLI policy benefits as ordered by the Plaintiff's divorce judgment, due to Defendants failure. Amended Complaint at ¶¶ 67-68. Because the facts of the Amended Complaint state a claim for legal malpractice, it cannot be considered futile.

Defendants' second argument supporting their opposition is that the new claims asserted in the Amended Complaint are time barred because they are distinct from, and thus do not relate back to, the claims asserted in Plaintiff's initial complaint. "An amendment of a pleading relates back to the date of the original pleading when. . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." M.R. Civ. P. 15(c)(2). In Plaintiffs' view the transaction or occurrence subject to the Count II of their complaint is the firm's representation of Plaintiff Herrick in her divorce proceeding, and the firm's continued representation of her when she sought to enforce the judgment. The conduct asserted in Plaintiffs' initial complaint as the basis for Count II is that Defendants failed to properly supervise the actions of its employed attorneys in the firm's representation. Count II of the Amended Complaint alleges the same, though with more details about said representation. For this reason, the Court finds that the Amended Complaint relates back to the same transaction or occurrence subject to the original complaint.

Third, Defendants assert that allowing the proposed amendment would result in unfair prejudice. Specifically, Defendants argue that the Amended Complaint relies on an entirely new theory, at odds with Plaintiffs' prior deposition testimony. However, despite adding facts to bolster Count II of their complaint, Plaintiffs have not asserted an entirely new theory. Instead, as

4

previously stated, the claims against the Defendant in the original Complaint are very similar if not the same in the Amended Complaint.

Finally, Defendants claim that the Amended Complaint does not withstand scrutiny, as it is not predicated on new information. However, in their papers Plaintiffs have pointed to a variety of facts not available to them prior to deposing Defendants. The Court also notes that Plaintiffs promptly filed their Motion to Amend the day after receiving an electronic copy of the deposition testimony. The Court therefore concludes that in filing their Amended Complaint, Plaintiffs are not acting in bad faith, causing undue delay, or subjecting Defendants to unfair prejudice. Accordingly, the Court grants Plaintiffs' motion for leave to file the Amended Complaint.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated:___July 10, 2020__                     _____/S_____
                                             **Justice M. Michaela Murphy**
                                             **Business and Consumer Court**

BCD-CV-2020-07

*KELSEY HERRICK, INDIVIDUALLY,*
*and obo minor children*

*v.*

*MELISSA MONTEJANO,*
*JESSICA DEMERS, ESQ.*
*and BORQUE & CLEGG, LLC*

Party Name:                                          Attorney Name:


*Kelsey Herrick, et al.*                    **Christopher Wright, Esq.**
                                                           Siegel & Crockett, PC
                                                           63 Main Street
                                                           Bethel, ME 04217


*Melissa Montejano*                     **Gregory McCullough, Esq.**
                                                           McCoullough Law Offices
                                                           1074 PO Box 910
                                                           Sanford, ME 04073


*Jessica Demers, Esq.*                   **James Bowie, Esq.**
                                                           Thompson, Bowie & Hatch
                                                           415 Congress Street
                                                           Portland, ME 04112


*Bourque & Clegg*                         **George Dilworth, Esq.**
                                                           Drummond Woodsum
                                                           84 Marginal Way, Suite 600
                                                           Portland, ME 04101