MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 133
Docket:        Yor-13-475
Argued:        May 14, 2014
Decided:       November 25, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

ESTATE OF THOMAS E. CABATIT

v.

STEPHEN A. CANDERS et al.

GORMAN, J.

[¶1]  Joseph N. Cabatit, as successor personal representative of the Estate of Thomas E. Cabatit, appeals from a summary judgment entered in the Superior Court (York County, *O'Neil, J.*) in favor of Stephen A. Canders and Maine Legal Associates, P.A. (collectively, MLA) on his claims of professional negligence and breach of fiduciary duty.[1]  Because we conclude that (1) no attorney-client relationship existed between MLA and Joseph in his role as successor personal representative of the Estate and (2) MLA did not owe any duty to Joseph as a nonclient, we affirm the judgment.

---

[1]   Joseph initially filed the complaint both as personal representative of the Estate and individually as a beneficiary.  He does not appeal the Superior Court's judgment as to his interest as a beneficiary, however, and thus we address the appeal only as to his status as personal representative.

## I. BACKGROUND

[¶2] The parties' joint stipulated statement of material facts and the agreed-to record establish the following facts. Thomas E. Cabatit died in 2005, survived by two sons, Jerediah Cabatit and Joseph Cabatit. Pursuant to Thomas's will, Jerediah and Joseph were given equal shares of his Estate after the payment of debts, taxes, and expenses. In his will, Thomas designated his sister, Julibel Cabatit-Alegre, as the personal representative of the Estate.

[¶3] On November 15, 2005, Julibel and MLA entered into an engagement and fee agreement, which provided, in pertinent part, as follows:

> The Client, Julibel Cabatit-Alegre, named Personal Representative in the Will involved in the Estate listed below, retains the firm of **MAINE LEGAL ASSOCIATES, P.A.**, and its attorneys, presently including Stephen A. Canders . . . to perform legal services in the following matter:
>
> **1. Scope of Legal Services** *Probate of the Estate of Thomas E. Cabatit, late of Scarborough, Maine, not including any collection proceeding. . . .* Services will include . . . preparation of any and all necessary probate court documents, pleadings, accounts, inventories and other required or necessary forms, documents and instruments, and correspondence . . . . No title services will be involved in this representation. Litigation services and preparation of a federal estate tax return are not included in the scope of representation.

MLA advised Jerediah and Joseph that it represented the personal representative, not the Estate. Accordingly, Jerediah and Joseph retained an attorney to inventory the Estate and negotiate with Julibel.

[¶4] On July 9, 2008, Jerediah and Joseph filed a petition to surcharge Julibel and remove her as personal representative, alleging that she had mismanaged the Estate. After a contested hearing, the Cumberland County Probate Court (*Mazziotti, J.*) removed Julibel on December 28, 2010, and designated Joseph as the successor personal representative. In its order, the court found, inter alia, that Julibel's hourly fee as personal representative was manifestly excessive, that she was not entitled to reimbursement of travel expenses for a traveling companion on her trips from her home in the Philippines to Maine, and that she had failed to take possession of and administer property owned by Thomas in the Philippines. The court noted that Julibel's "excessive fees may have been in some respects the consequence of advice rendered to her by Stephen Canders." It ordered Julibel to reimburse the Estate for the excessive fees and granted the petition to remove her as the personal representative of the Estate. Throughout the five-plus years of this probate proceeding, Jerediah and Joseph were represented by non-MLA counsel and sought advice from non-MLA attorneys. MLA rendered legal advice solely to Julibel.[2]

[¶5] On October 28, 2011, Joseph, in his individual capacity as a beneficiary of his father's Estate and also in his capacity as the personal

---

[2] Because Stephen Canders testified as a fact witness as part of the probate litigation, he withdrew from his representation of Julibel. She retained alternate counsel for the litigation.

representative of the Estate, sued MLA in the Superior Court for professional negligence (Counts I and II) and breach of fiduciary duty (Counts III and IV), alleging that MLA breached duties it owed to the Estate and to Joseph as a beneficiary by giving Julibel improper advice concerning, inter alia, the reasonableness of her personal representative fees and the Estate's obligations to pay taxes. Joseph did not sue Julibel.

[¶6] Joseph subsequently served a notice of Canders's deposition, in which he sought the production of MLA's legal files concerning its representation of Julibel. MLA moved to quash the request on the ground of attorney-client privilege. On March 7, 2013, the Superior Court (*O'Neil, J.*), finding that the attorney-client relationship between MLA and Julibel was intact, granted MLA's motion to quash any discovery request concerning privileged materials relating to MLA's representation of Julibel. In its order, the court acknowledged that the parties disputed whether MLA represented the Estate or its beneficiaries, but concluded, based on the parties' pleadings and the fee agreement, that "[n]either the [engagement and fee] agreement, nor any actions alleged, suggest [MLA] held [itself] out as attorney for the Estate of Thomas Cabatit or the beneficiaries thereof."

[¶7] MLA later filed a motion for summary judgment pursuant to M.R. Civ. P. 56(b), asserting that it owed no duty to anyone other than Julibel.

The motion included a joint stipulated statement of material facts. On September 16, 2013, the court granted the motion based on its determination that the "scope of [the] attorney-client relationship did not include a duty to the estate." Joseph timely appealed.

## II. DISCUSSION

[¶8] Joseph contends that the court erred as a matter of law in determining that MLA owed a duty of care only to Julibel.[3] We review de novo the court's grant of a summary judgment in favor of MLA by considering "both the evidence and any reasonable inferences that the evidence produces in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact." *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484 (quotation marks omitted). When the defendant is the moving party, he must establish that there is no genuine dispute of fact and that the undisputed facts would entitle him to judgment as a matter of law.[4] *Connolly v. Me. Cent. R.R. Co.*, 2009 ME 43, ¶ 7, 969 A.2d 919.

---

[3] We are not persuaded by and do not separately address Joseph's other arguments, including his assertion that MLA owes some duty to the "office of the personal representative."

[4] Pursuant to 18-A M.R.S. § 3-715(22) (2013), a personal representative has the power to "[p]rosecute . . . claims, or proceedings in any jurisdiction for the protection of the estate." *See also* 18-A M.R.S. §§ 3-712, 3-716 (2013); Restatement (Third) of Trusts § 94(1) (2012) ("A suit against a [personal representative] . . . to . . . redress a breach of trust or otherwise to enforce the trust may be maintained . . . by a . . . successor [personal representative]."). Thus, the Probate Code confers on Joseph, in his capacity as personal representative, the standing to bring suit in this case. Because he does not appeal that portion of the court's judgment entered against him individually, we need not

6

It then becomes the plaintiff's burden to make out the prima facie case and demonstrate that there are disputed facts. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

[¶9] Whether MLA, as the attorney for the predecessor personal representative, may be liable to the Estate turns on whether MLA owed the Estate a duty of care. *See Fisherman's Wharf Assocs. II v. Verrill & Dana,* 645 A.2d 1133, 1136 (Me. 1994); *see also Brown v. Me. State Emps. Ass'n*, 1997 ME 24, ¶ 10, 690 A.2d 956; Restatement (Third) of the Law Governing Lawyers § 51 (2000). Ordinarily, an attorney's duty runs only to his client, and only the client may claim that the attorney has breached that duty; in general, litigants cannot assert the claims of third parties. *See N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 11, 26 A.3d 794. In legal malpractice suits, therefore, except in egregious circumstances demonstrating such serious misdeeds as fraud, only a client with whom an attorney stands in privity of contract may bring a suit against the attorney. *See Nat'l Sav. Bank v. Ward,* 100 U.S. 195, 205-06 (1879); *see also* 1 Ronald E. Mallen et al., Legal Malpractice § 6:1 & n.3 (2014 ed.) (stating that "'ex delicto' liability of attorneys to third persons exists only for fraud, collusion, or a malicious or tortious act," and compiling cases).

---

evaluate Joseph's standing to sue as a beneficiary. *See Nevin v. Union Trust Co.*, 1999 ME 47, ¶¶ 39-42, 726 A.2d 694.

[¶10] Although he recognizes this general principle, Joseph makes two arguments to support his contention that MLA's representation of Julibel "included" the representation of Joseph in his capacity as her successor. First, he asserts that the Probate Code's language stating that a successor personal representative has the same powers and duties as his predecessor reflects a legislative intent to abandon the strict privity rule in instances where a successor personal representative sues a probate attorney for malpractice. Second, he asserts that the summary judgment record reveals disputed issues of material fact regarding the scope of any attorney's representation of a personal representative that preclude a conclusion that MLA did not owe Joseph a duty of care as a matter of law. We address each argument below.

A.    Attorney-Client Relationship and Probate Code Provisions

[¶11] The interpretation of the Probate Code is a legal issue that we review de novo. *Estate of Hunt*, 2010 ME 23, ¶ 6, 990 A.2d 544. When interpreting a statute, "[w]e first look to the plain meaning of the statute, interpreting its language to avoid absurd, illogical or inconsistent results, and attempting to give all of its words meaning." *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, 60 A.3d 1241 (citation omitted) (quotation marks omitted).

[¶12] A personal representative has the power to employ an attorney "to advise or assist the personal representative in the performance of [her]

administrative duties" and to "[p]rosecute or defend claims" to protect both the estate and the personal representative in the performance of her duties. 18-A M.R.S. § 3-715(21), (22) (2013). This statutory language would undeniably permit a personal representative to bring a malpractice suit against the attorney she hired to help probate a will. The Probate Code also expressly provides that a successor personal representative accepts the same powers and duties as his predecessor with respect to administering and distributing the estate. 18-A M.R.S. §§ 3-613, 3-716 (2013).

[¶13] Joseph argues that, when read together, these provisions *automatically* give a successor personal representative the right to bring a malpractice action against his predecessor's attorney. He urges us to apply to this case an analysis used in *Borissoff v. Taylor & Faust*, in which the Supreme Court of California concluded that the language of California's probate statute "strongly support[s] the inference that a successor fiduciary does have standing[5] to sue an attorney retained by a predecessor fiduciary." 93 P.3d 337, 340 (Cal. 2004). The decision in *Borissoff*, however, was based at least in part on the court's determination that there was no conflict of interest between the two fiduciaries, as well as its concern that a "faultless fiduciary" might otherwise be sued in order to

---

[5]   Although the court phrased its inquiry in terms of "standing," its discussion of the privity between an attorney and a successor personal representative reveals that the court was actually considering issues surrounding duty. *Borissoff v. Taylor & Faust*, 93 P.3d 337, 340-41 (Cal. 2004).

obtain justice for an estate. *Id.* at 341, 343. Moreover, in *Borissoff*, the allegedly negligent omissions of the attorney whom the predecessor fiduciary had hired occurred *after* that fiduciary died. *Id.* at 339.

[¶14] The present matter is easily distinguished. Here, there is quite clearly a conflict between the personal representatives; the Probate Court determined that Julibel was not "faultless"; and the allegedly negligent acts of MLA took place while Julibel was the personal representative of the Estate. Although the California statute at issue in *Borissoff* may be, in some respects, comparable to the Maine provisions at issue here, we are not persuaded that the Legislature intended that the Maine Probate Code be read so broadly as to automatically create a duty on the part of the personal representative's attorney to all successor personal representatives, regardless of the circumstances.[6]

[¶15] Rather, whether an attorney owes a duty of care to a successor personal representative depends—except in limited and unusual circumstances discussed below—on the existence of an attorney-client relationship between the successor personal representative and the attorney. *See DiPietro v. Boynton,*

---

[6]   The potential for conflict and divided loyalty that we discussed in *Nevin*, 1999 ME 47, ¶ 41, 726 A.2d 694, as to multiple beneficiaries also applies here; these concerns preclude us from adopting a bright-line rule conferring standing to a successor personal representative to sue a probate attorney solely because the successor assumes the responsibilities of the "office of the personal representative." Indeed, what one personal representative may perceive as a recommendation or action falling within the scope of the attorney's duty to assist in properly settling and distributing the estate could be perceived by a successor as falling outside of that scope. *See id*.

628 A.2d 1019, 1025 (Me. 1993) (stating that an attorney is not held liable to third parties for the performance of professional duties in the absence of any evidence of collusion); *Gerber v. Peters*, 584 A.2d 605, 607 (Me. 1990) (affirming a summary judgment in favor of a law firm defendant on the ground that no attorney-client relationship existed between the parties); *see also* 1 Ronald E. Mallen et al., Legal Malpractice § 7:7 & n.1 (stating that "[t]here is an abundance of authority . . . for the proposition that only the client can sue the attorney for a negligent act or omission," and compiling cases).

B.     Possible Extension of Duty of Care when Client is a Personal Representative

[¶16]    Joseph has asserted that, even if he did not establish that he was MLA's client, he demonstrated that there were material issues of fact that should have precluded the trial court from determining, as a matter of law, that MLA owed him no duty of care.   Although we have not before had occasion to address the possible scope of an attorney's duty of care to nonclients, this is an issue that arises not infrequently in this area of malpractice litigation.   Because "[s]trict privity, as applied in the context of estate planning mal-practice actions, is a minority rule in the United States," *Estate of Schneider v. Finmann*, 933 N.E.2d 718, 720 & n.1 (N.Y. 2010) (collecting cases), other jurisdictions have devised two methods of analyzing such a question.   We address each method and adopt the amalgamation of the two—the multifactor third-party beneficiary test created by

the Supreme Court of Washington in *Trask v. Butler*, 872 P.2d 1080, 1084 (Wash. 1994)—as discussed below.

[¶17] The first method used by other jurisdictions is the third-party beneficiary theory. Pursuant to this method, the principal inquiry in determining whether an attorney may owe a duty of care to a nonclient is whether, in the absence of a contractual relationship, the attorney's services were intended to benefit the nonclient:

> a nonclient may maintain a cause of action against an attorney for professional malpractice as an intended third-party beneficiary in those limited situations where the client's sole purpose in retaining the attorney is to benefit the nonclient directly, and the attorney's negligence instead causes the nonclient to suffer a loss.

*Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 738 (Minn. Ct. App. 1995); *see also Trask*, 872 P.2d at 1084 ("[T]he threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained."); *Neal v. Baker*, 551 N.E.2d 704, 705 (Ill. App. Ct. 1990) ("A nonclient must prove that the primary purpose and intent of the attorney-client relationship is to benefit or influence the third party.").

[¶18] The second method is the multifactor balancing test, which is an augmentation of the third-party beneficiary test. Pursuant to the multifactor balancing test, the court also considers

the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury . . . [,] the policy of preventing future harm . . . , [and] whether the recognition of liability . . . would impose an undue burden on the [legal] profession.

*Lucas v. Hamm*, 364 P.2d 685, 687-88 (Cal. 1961); *see also Goldberger*, 534 N.W.2d at 738 (discussing the connection between the *Lucas* balancing test and the third-party beneficiary theory).

[¶19]   In *Trask*, the Washington court noted that the two tests, although created independently in separate jurisdictions, "are indistinguishable in that their primary inquiry focuses on the purpose for establishing the attorney-client relationship."   872 P.2d at 1084.   Thus, the *Trask* court combined the two to create a "modified multi-factor balancing test" in which "the extent to which the transaction was intended to benefit the plaintiff" is the threshold—and potentially dispositive—inquiry.   *Id*.   Only if some minimum benefit to the plaintiff was intended will the court go on to consider the other factors in the test.   *Id*.

[¶20]   In a case similar to the one before us, the Maine Superior Court relied on the multifactor third-party beneficiary test as set out in *Trask* to support its conclusion that an attorney for the former personal representative owed no duty of care to the estate.   *Jensen v. Crandall*, 1997 WL 34981765, at **1-4 (Me. Super. Mar. 4, 1997).   In weighing the relevant factors, the *Jensen* court

concluded that the attorney's services were not intended to benefit the estate. *Id.* at \*4. Additionally, the court highlighted that the estate had an alternative means for redress other than filing a claim against the personal representative's attorney in that "[b]eneficiaries who have been injured by the personal representative's actions may recover through a claim directly against the personal representative. The personal representative may in turn seek redress from his attorneys to the extent that his failure was occasioned by their breach of duty to him." *Id.*; *see* Restatement (Third) of the Law Governing Lawyers § 51(3)(c). The *Jensen* court also noted that imposing a duty to nonclients on the personal representative's attorney would unduly burden the legal profession because of the "potential for . . . unresolvable conflict" both among the beneficiaries' competing interests and between the beneficiaries' interests and the intent of the testator. *Jensen*, 1997 WL 34981765, at \*4.

[¶21] We reiterate that the general rule is that an attorney owes a duty of care to only his or her client. *See, e.g.*, *Brown*, 1997 ME 24, ¶ 10, 690 A.2d 956. Nevertheless, in limited and rare situations, when an attorney's actions are intended to benefit a third party and where policy considerations support it, we may recognize a duty of care by that attorney to a limited class of nonclients. *See, e.g.*, *Estate of Schneider*, 933 N.E.2d at 720-21 (holding that a nonclient estate could maintain a malpractice claim against the estate-planning attorney). An

attorney will never owe a duty of care to a nonclient, however, if that duty would conflict with the attorney's obligations to his or her clients. *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 11, 54 A.3d 710 ("The court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client." (alteration omitted) (quotation marks omitted)); *see Estate of Keatinge*, 2002 ME 21, ¶¶ 17-18, 789 A.2d 1271; *Nevin v. Union Trust Co.*, 1999 ME 47, ¶ 41, 726 A.2d 694; *see also* Restatement (Third) of the Law Governing Lawyers § 51(3)(b).

[¶22] In light of our adoption of the multifactor third-party beneficiary test, we would normally remand the case to the trial court. In this case, however, no remand is necessary because there are no disputed facts to be decided, and applying the law to the facts leads to only one conclusion. The parties presented the following facts to the trial court: MLA represented only Julibel during the probate litigation; MLA had advised both Joseph and Jerediah that it represented the personal representative and not the Estate; Joseph and Jerediah retained their own non-MLA attorney in connection with the inventory of Thomas's house and for negotiating a caretaker agreement with Julibel for that house; and Joseph and Jerediah retained a different non-MLA attorney with regard to their petition to surcharge Julibel and remove her as personal representative. In short, Joseph and Jerediah were represented by non-MLA counsel for the entire probate proceeding.

Even when viewing the stipulated facts in the light most favorable to Joseph, we cannot conclude that there is a genuine issue of material fact as to the existence of an attorney-client relationship between MLA and Joseph in his role as the successor personal representative.

[¶23]    Although, in some unusual circumstances, an attorney hired by the original personal representative might owe a duty of care to the personal representative's successor, those circumstances are not present here.    We conclude that the Superior Court correctly determined that Joseph did not meet his burden to present prima facie evidence of an attorney-client relationship between MLA and himself in his capacity as the successor personal representative.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

> Lee H. Bals, Esq., Marcus, Clegg & Mistretta, P.A., Portland,
> for appellant Joseph N. Cabatit

> James M. Bowie, Esq., and Hillary J. Bouchard, Esq.,
> Thompson & Bowie, LLP, Portland, for appellees Stephen A.
> Canders and Maine Legal Associates, P.A.

**At oral argument:**

Lee H. Bals, Esq., for appellant Joseph N. Cabatit

James M. Bowie, Esq., for appellees Stephen A. Canders and Maine Legal Associates, P.A.