STATE OF MAINE
OXFORD, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. OXFSC-CIV-2024-00044

ALAN ALBANASI, et al.,

           Plaintiffs

v.

VEDA MAKER, et al.,

           Defendants

)
)
)
)
)
)
)
)
)
)
)

ORDER ON
MOTIONS TO DISMISS

Presently before the Court are Defendant Pine Tree Legal Assistance's ("PTLA") Motion

to Dismiss and Defendant Veda Maker's Motion to Dismiss the multi-count complaint filed by

Plaintiffs Alan Albanasi, Arthur Albanasi, Seth Carey, Sherri Smart, and Samantha Smart. Seth

Carey filed an opposition to PTLA's motion but did not file any opposing pleading in response to

Maker's motion. No other Plaintiff filed any opposing pleadings. For the following reasons, both

Veda Maker and PTLA's motions to dismiss are granted.

## FACTUAL BACKGROUND

In October of 2023, Maker filed a complaint in the Rumford District Court (docket no.

RUMDC-CV-2023-00061) against Carey alleging violation of the implied warranty and covenant

of habitability, negligence, and illegal eviction ("Underlying Litigation"). Following an

evidentiary hearing, the Court granted, in part, Maker's motion for preliminary injunction.[1] The

complaint was subsequently dismissed on April 21, 2024, due to Maker's failure to accomplish

service. *Maker v. Carey*, No. RUMDC-CV-2023-00061 (Me. Dist. Ct., Rumford, April 21, 2024)

---

[1] The Court granted the motion as to Seth Carey but denied it as to a second defendant, William Foster, because there
was no evidence of Foster's relationship to the property at issue or the plaintiff. Maker v. Carey, RUMDC-CV-23-
061 at 9.

1

(Rumford, *Archer, J.*). The Court summarily denied Carey's post-dismissal attempts to obtain a temporary restraining order and sanctions. *Maker v. Carey*, No. RUMDC-CV-2023-00061 (Me. Dist. Ct., Rumford, June 6, 2024) ("Mr. Carey cannot avoid the Spickler Order restricting his ability to commence actions by attempting to file an improper post-judgment motion in this matter.").

Carey and others have now filed a complaint for "money owed" against Maker, her husband Jason Conway, and PTLA, which represented Maker in the Underlying Litigation. After engaging in a cursory review of the complaint under the operative Spickler order, the Court ordered the complaint be accepted because the Court could not, at that time, conclude that the complaint was frivolous or vexatious. The Court made clear, however, that "because Mr. Carey is still suspended and not permitted to practice law, he shall not file any pleadings on behalf of any other plaintiff. Those parties must represent themselves or retain counsel that is admitted to the Maine bar. Mr. Carey is only permitted to represent himself in this action." (8/15/24 Order Permitting Filing of Complaint.)

The complaint seeks a writ of replevin (Count I) and damages for negligence (Count II), conversion (Count III), fraud (Count IV), intentional infliction of emotional distress (Count V), negligent infliction of emotional distress (Count VI), and defamation and false light (Count VII).[2] Many of the allegations in the Complaint arise directly out of the Underlying Litigation. To the extent they do not, it is extremely unclear which Plaintiff is asserting which claim and on what basis.[3]

---

[2] The complaint incorrectly lists this claim as Count VIII.

[3] The lack of clarity is suspicious, particularly given that Smart subsequently alleged that Carey misrepresented the purpose of the lawsuit to her. (10/29/24 Smart Motion to Dismiss.)

PTLA was served in hand with the complaint and summons as required by Maine Rule of Civil Procedure 4, but Maker was not. Instead, the Oxford County Sheriff's Office "posted" the complaint. (8/28/24 Return of Service.) Oddly, the return of service does not indicate the assessment of any costs of service. No motion for service on Maker by alternate means was ever filed or granted by this Court. More than 90 days have passed since the filing of the Complaint, and the Plaintiffs have never personally served Maker.

Plaintiff Samantha Smart then moved to withdraw as a party from the action, which the Court interpreted as a motion to dismiss. Smart's motion was of great concern to the Court, because it alleged that Carey has been representing both Smart and her family, even though he is not licensed to practice law in the State of Maine. It further stated that "Carey misrepresented the purpose of the lawsuit and has been directly responsible for [Smart's] inability to retain legal counsel from Pine Tree Legal and its associates in an eviction process initiated by [Carey]." (10/29/24 Smart Motion to Dismiss.) On December 10, 2024, the Court held a hearing on Smart's motion. Importantly, neither Smart nor Carey appeared to address the concerning allegations that Carey is continuing to practice law in violation of various court orders. Because no objection was lodged, the Court dismissed Samantha Smart from the pending action. (12/10/24 Order Dismissing Plaintiff Samantha Smart.)

PTLA now seeks dismissal of the complaint pursuant to Maine's anti-SLAPP statute, 14 M.R.S. § 556, and for failure to state a claim pursuant to Maine Rule of Civil Procedure 12(b)(6). Maker moves to dismiss the complaint for failure to serve in a manner and within a time frame set forth by Maine Rules of Civil Procedure 3 and 4(c). Both defendants seek the assessment of attorneys' fees.

3

## DISCUSSION

### I.    Maker's Motion to Dismiss

Maker seeks dismissal of the claims against her due to ineffective and untimely service of process.   None of the Plaintiffs have opposed this motion.   Maine Rule of Civil Procedure 3 provides that when a civil action is commenced by filing a complaint, the return of service "shall be filed with the court within 90 days after filing of the complaint." M.R. Civ. P. 3(b).  The action may be dismissed on motion if the complaint or return of service is not filed within 90 days. *Id.*

Under Maine law, "[s]ervice of process shall be as prescribed by rule of court."  14 M.R.S. § 701.  Maine Rule of Civil Procedure 4(c) provides:

> **(c)    Service.**  Service of the summons, complaint, and notice regarding Electronic Service may be made as follows:
>
> (1)    By mailing a copy of the summons, complaint, and notice regarding Electronic Service (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgement form and a return envelope, postage prepaid, addressed to sender.  If no acknowledgement of service under this paragraph is received by the sender within 20 days after the date of mailing, service of the summons, complaint, and notice regarding Electronic Service shall be made under paragraph (2) or (3) of this subdivision.
>
> (2)    By a sheriff or a deputy within the sheriff's county, or other person authorized by law, or by some person specially appointed by the court for that purpose.   Special appointments to serve process shall be made freely when substantial savings in travel fees will result.
>
> (3)    By any other method permitted or required by this rule or by statute.

M.R. Civ. P. 4(c).

The summons reflects that the complaint was posted on Maker's door by a deputy sheriff. Rule 4 does not permit service in this manner.  Nor has the Court authorized the Plaintiffs to serve process by an alternate means. *See* M.R. Civ. P. 4(g).  It does appear that Maker has actual notice of the complaint, however, given that she filed both an answer and the pending motion to dismiss.

4

Because the Plaintiffs have failed to effectively and timely serve the complaint, Maker's motion to dismiss is granted.[4]

## II. PTLA Motion to Dismiss

### A. Dismissal Pursuant to Maine's Anti-SLAPP Statute

PTLA first seeks dismissal pursuant to the Anti-SLAPP statute, 14 M.R.S. § 556, to the extent the claims arise out of the Underlying Litigation. Carey's opposition asserts that the focus on Maine's anti-SLAPP statute is "absurd" and contends that "there was no recognized petitioning activity that Plaintiff tried to thwart [and] immunity does not protect the fraud and other bad acts of a defendant." (Pl.'s response filed 10/04/24, ¶ 8.) The pleading then spirals, utilizing inflammatory and unprofessional language.

The Anti-SLAPP statute provides:

> When a moving party asserts that the civil claims . . . against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556. If the special motion is successful, the moving party is entitled to costs and attorney's fees. *Id.*

The statute defines "a party's exercise of its right of petition" to include 6 categories of protected activity, 5 of which cover PTLA and Maker's conduct in pursuing the Underlying Litigation: (1) "any written or oral statement made before or submitted to" a court; (2) "any written

---

[4] Even if the complaint against Maker was not dismissed on service grounds, the Court would dismiss it for failure to state a claim and/or pursuant to Maine's anti-SLAPP statute for all the reasons identified in support of PTLA's motion.

or oral statement made in connection with an issue under consideration" by a court; (3) "any statement reasonably likely to encourage consideration or review of an issue" by a court; (4) "any statement reasonably likely to enlist public participation in an effort to effect such consideration"; and (5) "any other statement falling within constitutional protection of the right to petition government." *Id.*

With the exception of Count I, the Plaintiffs' claims may be read to arise at least in part out of the Underlying Litigation. Because the special motion to dismiss has met its initial burden of establishing that Counts II through VII are based, at least in part, upon petitioning activity, the burden shifts to the Plaintiffs to prove that the petitioning activity was "devoid of any reasonable factual support or any arguable basis in law." 14 M.R.S. § 556. The Plaintiffs also must establish that they suffered an "actual injury." *Id.*

The Plaintiffs have failed to meet their burden. There is no evidence that the petitioning activity was without factual support or basis in the law. In fact, this Court granted Maker's motion for preliminary injunction in the Underlying Litigation, specifically finding that she "established a clear likelihood of success on the merits" of her claims against Carey.[5]

The Plaintiffs also failed to establish that they suffered any actual injury. *Id.* Although Carey's affidavit claims that he suffered damages in the form of lost rent, he fails to identify the amount of those damages. Section 556 requires a plaintiff to "produce affirmative evidence of an injury." *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 10, 847 A.2d 1169; *see also Weinstein v. Old Orchard Beach Family Dentistry, LLC*, 2022 ME 16, ¶¶ 11-13, 271 A.3d 758 (noting

---

[5] The Court notes that Count VII also arises out of Maker's pursuit of a protection from harassment action against Carey and Albanasi, which is also protected activity. Maker's motion did not seek dismissal pursuant to the anti-SLAPP statute, however. As explained elsewhere in this decision, the Complaint is dismissed as to Maker for failure to effectuate service. Were Maker to have joined in PTLA's motion to dismiss, however, the Court would likely have dismissed the complaint as to Maker under the ant-SLAPP statute or for failure to state a claim pursuant to Maine Rule of Civil Procedure 12(b)(6) for many of the same reasons outlined herein.

6

emotional injury alone does not satisfy the actual injury requirement); *Schelling v Lindell*, 2008 ME 59, ¶¶ 26-27, 942 A.2d 1226 (concluding claim for loss of sleep, mental suffering, and embarrassment are insufficient to meet the actual injury requirement); *Dairy Farm Leasing Co. v. Hartley*, 395 A.2d 1135, 1140 (Me. 1978) (observing that the record must contain evidence of damages in a definite amount when recovery is only permitted for actual damages and that the determination "must not be left to mere guess or conjecture" (quoting *McDougal v. Hunt*, 146 Me. 10, 14, 76 A.2d 857, 860 (1950))).

The Plaintiffs' failure to satisfy their burden requires dismissal of Counts II through VII, to the extent those claims are based upon PTLA's protected activity.[6]

### B. Dismissal for Failure to State a Claim

PTLA argues that each count of the Complaint fails to state a claim and should therefore be dismissed pursuant to Maine Rule of Civil Procedure 12(b)(6). "A motion to dismiss tests the legal sufficiency of the complaint, the material allegations of which must be taken as admitted." *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2019 ME 90, ¶ 16, 209 A.3d 116 (citations and quotation marks omitted). When deciding a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), this Court reviews the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217).

---

[6] Alternatively, Counts II through VII of the complaint are barred by the litigation privilege and therefore dismissed, to the extent those claims arise out of the Underlying Litigation. *See Dineen v. Daughan*, 381 A.2d 663, 664-65 (Me. 1978).

### 1. Writ of Replevin (Count I)

Count I of the Complaint alleges that "Defendants have unfairly collaborated to wrongly take possession of Plaintiff Carey's valuable property" and seeks a writ of replevin to re-take possession.[7] (Compl. ¶¶ 53-54.) An action for replevin seeks immediate possession of specific goods. *Doughty v. Sullivan*, 661 A.2d 1112, 1118 (Me, 1995); 14 M.R.S. § 7301. It is subject to the special pleading rules set forth in Maine Rule of Civil Procedure 64(d), which requires an allegation in the complaint that a demand for possession was made and refused prior to commencing the action. *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 64.2 (2d ed. 1970).

The Plaintiffs' Complaint fails to comply with the essential requirements of Rule 64 and therefore fails to state a claim. Count I is dismissed in its entirety as to all Defendants.

### 2. Negligence (Count II)

Count II of the Plaintiffs' Complaint alleges that the Defendants "acted purposely and negligently in filing an illegitimate lawsuit against Plaintiff Carey and harassing Plaintiffs." (Compl. ¶ 56.) To prevail on a claim of negligence, a plaintiff must establish (1) a duty of care, (2) breach of that duty, (3) injury, and (4) causation. *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 16, 60 A.3d 759. Whether a defendant owes a duty of care is a question of law. *Davis v. Dionne*, 2011 ME 90, ¶ 8, 26 A.3d 801.

PTLA correctly contends that it did not owe any duty to the Defendants. "Duty involves the question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Id.* ¶ 10 (quoting *Jackson v. Tedd-Lait Post No. 75, Am. Legion*, 1999 ME 26, ¶ 7, 723 A.2d 1220). The Complaint fails to identify any relationship at all between PTLA and Arthur

---

[7] The Complaint claims that a motion for replevin is attached (Compl. ¶ 54), but no such motion was attached to the Complaint or separately filed.

8

Albanasi, Sherri Smart or Samantha Smart. The only relationship identified between PTLA and Alan Albanasi[8] and Seth Carey is a relationship stemming from litigation in which PTLA represented a party opposing those individuals. An attorney does not owe a duty of care to a nonclient if the duty conflicts with the attorney's obligations to his or her clients, however. *Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 21, 105 A.3d 439.

The Plaintiffs have therefore failed to state a claim of negligence as to PTLA. Further, because the Complaint fails to establish that any of the Defendants owed a duty of care to any of the Plaintiffs, Count II is dismissed in its entirety as to all Defendants.

### 3. Conversion (Count III)

The Complaint alleges that "Defendants have collaborated in order to live rent-free for a year and counting," as a basis for their conversion claim. (Compl. ¶¶ 59-60.) PTLA argues that this claim fails because a party cannot be liable for converting real property and because the Complaint does not allege that PTLA was the wrongful party.

Although the Court needs to read between the lines to decipher this claim, it appears to be asserted only by Carey. The Complaint does not allege that any of the Defendants converted any property of the other four Plaintiffs. As for Carey's claim of conversion, it alleges that the Defendants colluded to take his real property. The elements of a conversion claim are: (1) the person claiming that her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder. *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769. Real property is not a proper subject of the tort of conversion, however. *Morton & Burr*, No. BCDRE1303, 2014 WL 380895, at *7

---

[8] It is unclear whether PTLA even has this tenuous of a relationship with Albanasi. This is the best that the Court could come up with, given the language of the Complaint.

(Me. Bus. & Consumer Ct., Jan. 16, 2014); *see also* Horton & McGeehee, *Maine Civil Remedies* § 18-4 at 358 & n.15 (4th ed. 2004).

The Plaintiffs have therefore failed to state a claim of conversion and, accordingly, Count III is dismissed in its entirety as to all Defendants.

### 4. Fraud (Count IV)

Count IV of the Complaint alleges that the Defendants engaged in a scheme to defraud Carey, Maker and Conway's landlord, which was continued and expanded during the Underlying Litigation. (Compl. ¶¶ 63-64.) PTLA argues that any statements made during the Underlying Litigation are privileged but, regardless, Count IV fails to state a claim because it does not identify specific fraudulent representations or allege justifiable reliance upon those representations.

As with the conversion claim, the fraud claim appears to be asserted only by Carey. To prevail on a claim of fraud, a plaintiff must allege that the defendant (1) made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it was true or false, (4) for the purpose of inducing the plaintiff to act in reliance, and (5) the plaintiff justifiably relied on the representation as true and acted to their detriment. *Deane v. Central Me. Power Co.*, 2024 ME 72, ¶ 22, 322 A.3d 1223. Fraud claims must state the circumstances constituting fraud "with particularity," which is a heighted pleading requirement. *Id.* ¶ 22; M.R. Civ. P. 9(b).

Count IV bombs miserably in its attempt to state a claim of fraud, let alone even come close to alleging the circumstances of fraud with particularity. It fails to specifically identify the purported false representation, that there was knowledge of its falsity or that it was made in reckless disregard to the truth, that the statement was made for the purpose of inducing the Plaintiffs to act, or that the Plaintiffs took any action at all in reliance upon any misrepresentation.

10

In short, the Court agrees that the Plaintiffs are "merely throwing every claim imaginable at the wall in the hopes that something sticks." (Mot. Dismiss 14.)

Count IV is therefore dismissed in its entirety as to all Defendants.

### 5. Intentional Infliction of Emotional Distress (Count V)

Count V of the Complaint alleges that Defendants engaged in "willful" and "outrageous" conduct that was "intended to cause Plaintiffs great mental anguish and suffering," that the Plaintiffs have received medical services due to the alleged infliction of emotional distress, and that Shari Smart was sent to the hospital five times due to stress resulting from "this situation." (Compl. ¶¶ 66-69.) PTLA argues that this claim fails for a number of reasons, including (a) application of the litigation privilege, (b) that the conduct was, as a matter of law, not extreme and outrageous, (c) the complaint fails to specify the factual basis for the claim, and (d) there is no allegation that the emotional distress was so severe that no person could be expected to endure it. (Mot. Dismiss. 15-16.) The Court agrees with each of those arguments.

To state a claim for intentional infliction of emotional distress ("IIED"), the complaint must allege:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Argereow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210. Whether the facts are sufficient to establish that the defendant's conduct was "so extreme and outrageous to permit recovery" is a question of law for the court. *Id.* (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842).

11

Carey and Arthur Albanasi's claims fails to the extent they are based on the initiation of outside litigation (to the extent they are not barred by the litigation privilege and/or anti-SLAPP statute). Filing a lawsuit cannot form the basis for an IIED claim. *Davis v. Currier*, 1997 ME 199, ¶ 6, 704 A.2d 1207.

As for the remainder of Count V, it fails to state a claim. The Court has no idea what specific conduct allegedly generated the IIED claim and therefore cannot evaluate whether that conduct was "so extreme and outrageous as to exceed all possible bounds of decency." *Argereow*, 2018 ME 140, ¶ 27, 195 A.3d 1210. The Complaint also lacks any allegations that the Plaintiffs suffered such severe emotional distress that "no reasonable person could be expected to endure it." *Id.*

Count V therefore fails to state a claim and is dismissed in its entirety as to all Defendants.

### 6. Negligent Infliction of Emotional Distress (Count VI)

Count VI of the Complaint alleges that the Defendants "negligently inflicted emotional distress on Plaintiffs through their abusive actions," focusing on PTLA's alleged efforts to allegedly adversely affect Carey's license to practice law. (Compl. ¶¶ 71-72.) The Complaint goes on to allege that the Defendants' actions "have caused *her* distress," although it does not specify the "her" to whom it applies. (*Id.* ¶ 73.)

Count VI fails to state a claim for relief. The elements of negligent infliction of emotional distress are: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breached caused the plaintiff's harm." *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. "Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability," because there is no general duty to avoid negligently causing emotional harm. *Id.* Rather, the duty to avoid

12

emotional harm arises in only two circumstances: bystander liability actions and when a special relationship exists between the parties. *Id.* ¶ 19. Neither of those circumstances exist in this case.

Plaintiffs have therefore failed to state a claim and, accordingly, Count VI is dismissed in its entirety as to all Defendants.

### 7. Defamation and False Light (Count VII)[9]

Despite the title, Count VII contains no allegations pertaining to "false light."[10] The Complaint alleges that "a plethora of false statements and embellishments" were made by the Defendants "most under oath or in court," the Defendants "defamed Plaintiff in court," and "Maker verbally abused all Plaintiffs and had a PFH instituted against Carey and Albanasi." (Compl. ¶¶ 76-79.) The "false claims" allegedly "seriously affected Plaintiff Carey's hopes to be reinstated to his professional career." (*Id.* ¶ 79.)

"A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating with him." *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996). To state a claim of defamation, a plaintiff must allege:

(1) a false and defamatory statement concerning another;

(2) an unprivileged publication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; [and]

---

[9] As noted above, the Complaint incorrectly labels this claim as Count VIII.

[10] To state a claim of false light invasion of privacy, a plaintiff must allege that the defendant invaded her right to privacy by placing the plaintiff in a false light that would be highly offensive to a reasonable person, and the defendant had knowledge of or acted in reckless disregard as to the falsity of the publication and the false light in which the plaintiff would be placed. *See Veilleux*, 206 F.3d at 134; *Dempsey v. Nat'l Enquirer, Inc.*, 687 F. Supp. 692, 693 (D. Me. 1988); *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me. 1977) (adopting Restatement (Second) of Torts definition of false light invasion of privacy); Restatement (Second) of Torts §§ 652A, 652E (1965). As further explained by the Restatement, "[i]t is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position that there is a cause of action for invasion of privacy." Restatement (Second) of Torts § 652E cmt. c.

13

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 10, 222 A.3d 1063.

The Complaint fails to identify any false and defamatory statements and, accordingly, fails to state a claim. Count VII is therefore dismissed in its entirety as to all Defendants.

## CONCLUSION

The Complaint is dismissed in its entirety for the following reasons:

(1) Plaintiffs failed to serve Defendant Maker;

(2) Some or all of Counts II through VII are based upon protected activity by Defendants PTLA and Maker;

(3) Some or all of Counts II through VII are barred by the litigation privilege possessed by Defendants PTLA and Maker; and

(4) Regardless of the first three reasons for dismissing some or all of the Complaint, all counts fail to state a claim as to all Defendants. The Complaint is dismissed as to all Defendants, even though PTLA is the only party to file a motion to dismiss for failure to state a claim pursuant to Rule of Civil Procedure 12(b)(6), because it would be illogical and contrary to the concepts of judicial efficiency and economy to allow the Complaint to survive as to the non-moving Defendant under these circumstances.

## ATTORNEY'S FEES

Both Maker and PTLA seek attorney's fees. Maker did not identify a basis for her claim for fees and the Court does not find that one exists. Maker's request for attorney's fees is therefore denied.

PTLA, however, has a valid basis for requesting attorney's fees as to Plaintiff Carey pursuant to 14 M.R.S. § 556. Accordingly, it is ordered that Plaintiff Seth Carey shall pay the

14

reasonable attorney's fees and costs incurred by PTLA as allowable under the anti-SLAPP statute. Counsel for PTLA shall file an attorney fee affidavit[11] with attached supporting billing records within thirty (30) days of the date of this order. Upon review of the affidavit and supporting documentation, the Court will enter an order awarding reasonable attorney's fees.

The entry is:

Defendant Veda Maker's Motion to Dismiss is GRANTED.

Defendant Pine Tree Legal Assistance's Motion to Dismiss is GRANTED.

Plaintiffs' Complaint is DISMISSED.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order on Motions to Dismiss on the civil docket by a notation incorporating it by reference.

Date: December 20, 2024

Jennifer A. Archer
Justice, Maine Superior Court

---

[11] "At the very least, an affidavit attesting to the plaintiff's fee agreement with her lawyer, counsel's customary hourly rate, and other such basic facts, [is] necessary to allow the court to make a valid calculation as to what amount constitute[s] 'reasonable counsel fees' in this case." *Hebert v. Hebert*, 475 A.2d 422, 426 (Me. 1984).

15

Alan Albanasi, et als. v. Veda Maker, et als.     §
                                                  §     Location:  Oxford Superior Court
                                                  §     Filed on:  06/26/2024
                                                  §

---

## CASE INFORMATION

Case Type: **Civil**

Subtype: **Other Negligence - Non-Personal Injury**

Case Status: **12/20/2024   Final Judgment**

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**

| | |
|---|---|
| Case Number | OXFSC-CIV-2024-00044 |
| Court | Oxford Superior Court |
| Date Assigned | 06/26/2024 |

---

## PARTY INFORMATION

*Lead Attorneys*

| | | |
|---|---|---|
| **Plaintiff** | **Albanasi, Alan** | |
| | **Albanasi, Arthur** | |
| | **Carey, Seth** | |
| | **Smart, Samantha** | |
| | **Smart, Sherri** | |
| **Defendant** | **Conway, Jason** | |
| | **Maker, Veda** | **Tepler, Sheldon J** |

*Retained*
207-795-6296(F)
207-784-1589(W)
*HARDY WOLF & DOWNING*
*PO BOX 3065*
*LEWISTON, ME 04243-3065*
stepler@hardywolf.com

**Pine Tree Legal Assistance**                     **Wahrer, Benjamin**
*Retained*
207-774-2500(W)
*THOMPSON BOWIE & HATCH LLC*
*PO BOX 4630*
*PORTLAND, ME 04112-4630*
BWAHRER@THOMPSONBOWIE.COM

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 06/26/2024 | filing document - COMPLAINT - filed<br>Party: Plaintiff Carey, Seth<br>Created: 07/10/2024 9:52 AM | |
| 08/15/2024 | order - COURT ORDER - entered (Judicial Officer: Archer, Jennifer ) | |